# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

LORENZO ANTHONY,

    Plaintiff,	CASE NO. 07-CV-15138

v.	DISTRICT JUDGE MARIANNE O. BATTANI
    MAGISTRATE JUDGE CHARLES E. BINDER

KENNETH WERNER,
MICHAEL KRAJNIK,
DURFEE, D. RICUMSTRICT,
C. WALKER, THOMAS
BIRKETT, JAMES ARMSTRONG,
JOHN DOE 1-3,

    Defendants.
    _____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## PURSUANT TO 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) and 42 U.S.C. § 1997e(c)(1)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the case be dismissed in its entirety for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) and 42 U.S.C. § 1997e(c)(1).

## II.    REPORT

### A.    Introduction

On December 4, 2007, Plaintiff, a state prisoner currently housed at the Marquette Branch Prison in Marquette, Michigan, filed this *pro se* federal civil rights complaint pursuant to 42 U.S.C. § 1983. The events which give rise to the complaint occurred while Plaintiff was incarcerated at

the Standish Maximum Correctional Facility in Standish, Michigan. On March 4, 2008, this case was referred to the undersigned Magistrate Judge for pretrial case management. (Dkt. 24.) After having considered the documents filed in the instant case, I find that this case is ready for Report and Recommendation pursuant to the screening provisions found in 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)(1).

**B.     The Complaint**

Plaintiff asserts that Defendants were "deliberately indifferent to his health and safety by not taking measures to prevent assaults so prisoners can't throw/squirt human waste on others or staff." (First Am. Compl., Dkt. 17 ¶ 2.) He further alleges that

> [w]ithout legitimate penological purpose, Defendants subjected Plaintiff to unsafe, unhealthy living conditions by failing to insure safe conditions of confinement which threatened Plaintiff's health and personal safety of being subject to human waste being thrown/squirted on him and at him while being restrained in handcuffs en route to and from the shower by other prisoners. Defendants failed to take appropriate actions to remedy said issues and failed to even enforce their own alternative steps to prevent prisoner [sic] from smuggling squirt bottles full of feces and urine to the shower, by doing pat-down, strip searches.

(*Id.* ¶ 3.) Plaintiff avers that, "[a]s a result of Plaintiff complaining to prison officials about this matter on 12/29/06, Defendant Werner responded by stating that SMF would not install door slots on the segregation shower doors for fiscal reasons, and it's staff's responsibility to shake down prisoners as they come out for showers, which eliminates prisoners from bringing squirt bottles filled with urine and feces to the shower." (*Id.* ¶ 21.) Plaintiff further alleges that "Defendant Krajnik approved Defendants [sic] Werner response." (*Id.* ¶ 23.) Plaintiff complains that on November 9, 2007, "[a]s Plaintiff was being escorted out of the shower by RUO Tedrow and Defendant Durfee inmate Foster stuck his hand out the open shower slot holding a magic shave squirt container filled with feces and urine and pointed it in Plaintiff's direction and squeezed it,

spraying a mixture of feces and urine striking RUO Tedrow and Defendant Durfee on their body, and several drops landed in Plaintiff's hair." (*Id.* ¶¶ 28, 30.) Plaintiff alleges that "prior to the incident of 11/9/07, Defendants Werner and Krajnik knew that Plaintiff had assaulted inmate Foster before, and that inmate Foster had swore and made it know[n] [that] he wanted to assault Plaintiff." (*Id.* ¶ 30.) Plaintiff also avers that "Defendants Werner and Krajnik on or about 11/8/07 moved inmate Foster from cell 125 to 130 next to Plaintiff despite knowing these two prisoners had problems" and despite the fact that "Plaintiff had told Defendants Werner and Krajnik before of his problems with inmate Foster and [that] he didn't want him locking next to him for fear of being assaulted by him." (*Id.* ¶¶ 31-33.)

Plaintiff adds that neither "Defendant Werner nor Durfee shook down, nor patted down inmate Foster down before escorting him to the shower to search him for containers filled with urine & feces. Inmate Foster was wearing underwear and a pair of orange shorts which he had hidden a magic shave bottle container in. [It was f]illed with urine and feces." (*Id.* ¶ 26.) Plaintiff also alleges that "Defendants Werner and Krajnik have had monthly meetings or some other form of meetings of communications with Defendants Walker and Ricumstrict, and discussed issues that transpired inside of the segregation housing units, and knew or should have known that prisoners inside of the showers have throwen [sic] and squirted mixtures of urine and feces on other prisoners and staff going to and from the shower area." (*Id.* ¶ 34.) Thus, Plaintiff contends that "Defendants Ricumstrict and Walker, Werner and Krajnik knew or should have known that a safety and health hazard existed by the lack of food slot doors/coverings on the segregation shower slots, and lack of flexie [sic] glass or other covering on the segregation cage shower doors which enabled prisoners to throw/squirt human waste & urine on prisoners and staff and owed Plaintiff a duty to protect and correct these safety and security and health threats." (*Id.* ¶ 35.) Plaintiff also

alleges that Defendants knew or should have known that they were required to train staff to pat-down and search prisoners for contraband while coming out of their cells. (*Id.* ¶ 36.)

Plaintiff avers that he exhausted his administrative remedies by filing Step I through Step III grievances and that his Step III appeal was denied. (*Id.* ¶¶ 38-45.) The amended complaint alleges the following legal claims: (1) preliminary and permanent injunctive relief to train staff to address the safety and health concerns posed by prisoners throwing fecal matter and urine; (2) violation of the Eighth Amendment's prohibition against cruel and unusual punishment based on deliberate indifference, supervisory liability, failure to train, failure to protect; (3) violation of the Fourteenth Amendment "[a]nd posses [sic] a significant hardship upon the Plaintiff by Defendants." (*Id.* at 17-21.) Plaintiff "fears [that] he may have contacted [sic] HIV, AIDS, Hepatitis, and it may take years for said to be detected by testing." (*Id.* ¶ 50.) Plaintiff seeks compensatory and punitive damages as well as costs and attorney fees. (*Id.* at 21.)

### C. Governing Standards

This case is subject to screening under several provisions of the United State Code. Pursuant to 28 U.S.C. § 1915(e), when a plaintiff (prisoner or not) seeks IFP status, the court "shall dismiss the case at any time if the court determines that . . . the action or appeal is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). In addition, the "court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The screening process requires the court to "dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted or

4

seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Since Plaintiff has applied for and received IFP status and is suing governmental employees, both of these provisions apply.

Similarly, under the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.*, the court "shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(1). Since Plaintiff is a confined prisoner challenging the conditions of his confinement, this provision also applies.

When the court screens a complaint where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). In other words, the court may not "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or create a claim for the plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the

improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* ___U.S.___, 127 S. Ct. 1955, 1974 (2007).

### D. Discussion

#### 1. Eighth Amendment Deliberate Indifference

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody." *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). This obligation, however, is not absolute. Not every injury "suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 833. Prison officials are only liable if they acted with deliberate indifference to the safety of the inmate. *Id.*

The standard for deliberate indifference is two-pronged, consisting of both a subjective and an objective element. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271, 279 (1991). In order to satisfy the objective component of an Eighth Amendment claim, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer,* 511 U.S. at 834; *see also Stewart v. Love*, 796 F.2d 43, 44 (6th Cir. 1982), or that

he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).

In the instant case, Plaintiff complains that Defendants failed to prevent inmate Foster from throwing feces and urine on him (and the escorting guards) while on his way to the shower even though Plaintiff had informed Defendants that he feared being assaulted by inmate Foster and conducting a shake-down of the inmates could have avoided the problem. (Dkt. 17 ¶¶ 26, 28, 30, 31-33, 36.) There is no allegation that Defendants failed to clean the area or prevented Plaintiff from cleaning himself after such incidents.

I suggest that these allegations fall short of asserting conditions that could state a violation of the Eighth Amendment. *See Zimmerman v. Seyfert*, No. 9:03-CV-1389 (TJM), 2007 WL 2080517, *29 (N.D.N.Y. July 19, 2007) (no Eighth Amendment violation where officer delayed letting plaintiff shower for approximately one-half hour after feces and urine had been thrown on him by another inmate); *Hayes v. Waite,* No. 2:06-cv-101-FtM-29DNF, 2007 WL 2827730, *7 (M.D. Fla. Sept. 27, 2007) (no Eighth Amendment violation where other inmates created the unsanitary conditions by throwing feces and urine and where there was no allegation that Defendants failed to clean up after such incidents); *Sterling v. Smith*, No. CV606-103, 2007 WL 781274, *4 (S.D. Ga. Mar. 8, 2007) (no Eighth Amendment violation where there was no allegation that "prison officials condone such behavior [throwing fecal matter] or force [inmates] to remain in filthy conditions" an where plaintiff did not "allege that prison officials allow[ed] an unsanitary condition to persist by failing to clean the prison or refusing to provide him with cleaning supplies"); *Snyder v. McGinnis*, No. 03-CV-0902E, 2004 WL 1949472, *9-10 (W.D. N.Y. Sept. 2, 2004) (no Eighth Amendment violation where prison officials moved inmate next to plaintiff despite knowledge that they were enemies because risk that feces would be thrown at

inmate did not rise to level necessary to sustain claim); *McNatt v. Unit Manager Parker*, No. 3:99CV1397 AHN, 2000 WL 307000, *4 (D. Conn. Jan. 18, 2000) (where plaintiff deprived of toilet paper and cleaning supplies for one day, the court held that although the conditions were not pleasant, "the brief duration of the deprivation causes the court to conclude that the conditions did not constitute an Eighth Amendment violation").

I further suggest that, in so far as Plaintiff seeks compensation for emotional distress, dismissal is appropriate because the Prison Litigation Reform Act requires that any action for emotional injury suffered while in custody is barred unless the prisoner can show physical injury. 42 U.S.C. § 1997(e). The physical injury need not be significant, but it must be more than *de minimus* for an Eighth Amendment claim to proceed. *See Adams v. Rockafellow*, 66 Fed. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). Since the only alleged injury is that Plaintiff "fears [that] he may have contacted [sic] HIV, AIDS, Hepatitis, and it may take years for said to be detected by testing" (Dkt. 17 ¶ 50), I suggest that Plaintiff has failed to plead a claim that meets the PLRA's threshold. *See Owens v. Padula*, No. 8:06-3014-GRA-BHH, 2007 WL 2116440, *9 (D.S.C. July 19, 2007) (finding that anxiety, depression, hair loss, bruises, and ruptured sinuses was not a sufficiently significant physical injury resulting from other inmates throwing feces and urine on him, prison guards causing bruises by using the "black box," and guard pushing his face against a holding cell window); *Moore v. Simmons*, No. 5:06-CT-3143 H, 2007 WL 4262702, *3 (E.D.N.C. May 18, 2007) (no constitutional violation where plaintiff did not state that the complained-of conditions, including stagnant toilets and inmates throwing feces daily, "caused him serious or significant physical injury" despite plaintiff's claim that the conditions caused "sore throat-high grade fever"); *Jennings v. Weberg*, No. 2:06-CV-235, 2007 WL 80875, *3 (W.D. Mich. Jan 8, 2007) (dismissing case pursuant to § 1997e(e) where

plaintiff alleged that he was "battered with spit and urine" on a regular basis by another inmate which caused him "fear, distress and mental anguish that he experienced as a result of Defendant's failure to protect him"); *Smith v. Edwards*, No. 06-1259, 2006 WL 3512837, *3 (E.D. La. Dec. 5, 2006) (dismissing case pursuant to § 1997e(e) where plaintiff alleged defendants allowed inmate who had AIDS to throw feces on him while being escorted from the shower to his cell because plaintiff alleged only that he was upset, not that he suffered any physical injury); *Fackler v. Dillard*, No. 06-10466, 2006 WL 2404498, *3 (E.D. Mich. Aug. 16, 2006) (no constitutional violation where guard threw a cup of urine through the food slot of plaintiff's cell which splashed on plaintiff because, although devoid of any penological purpose, plaintiff did "not allege that she sought medical attention as a result of the incident or that she suffered any lingering injuries" beyond the "indignity" of it).

### 2. Fourteenth Amendment Due Process

A prisoner's liberty interest is implicated by prison discipline only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Here, although Plaintiff has alleged that his due process rights were violated in an atypical and significant manner (Dkt. 17 ¶¶ 17-21), he does not state that he was disciplined or otherwise denied due process. The substance of this portion of the complaint concerns the Eighth Amendment allegations that Defendants' failure to take measures to prevent the throwing of urine and feces, such as installing "flexie [sic] glass on the shower case doors" and "food slots (covers) on the open food slots," violates his rights. (*Id.* ¶ 17.) Ultimately, Plaintiff was told that Defendants would not install the suggested improvements for "fiscal reasons." (*Id.* ¶ 21.) Defendants' decision does not implicate a liberty or property interest of Plaintiff. Furthermore, even if a liberty interest were

implicated, I suggest that Plaintiff's averments do not state a claim for violation of due process rights. *See Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (incessant noise and inmates throwing feces on occasion was not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

### 3. Conclusion

For all the reasons stated above, I recommend that the case be dismissed pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) and 42 U.S.C. § 1997e(c)(1) because Plaintiff has failed to state a claim upon which relief can be granted.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                            s/ *Charles E Binder*
                                            CHARLES E. BINDER
Dated: March 26, 2008                        United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Julia R. Bell, served on Lorenzo Anthony by first class mail, and served on District Judge Battani in the traditional manner.


Date: March 26, 2008        By    s/Patricia T. Morris
                                          Law Clerk to Magistrate Judge Binder